*396 OPINION.
Marquette:
The parties to this proceeding are in accord as to the amount of the petitioner’s net income for the years 1919, 1920, and 1921, and the sole issue is whether the petitioner was entitled to classification as a personal service corporation during those years under the Revenue Acts of 1918 and 1921.
Both the Revenue Act of 1918 and the Revenue Act of 1921 define a “personal service corporation ” as a corporation (1) whose income is to be ascribed primarily to the activities of the principal owners or stockholders; (2) whose stockholders are regularly engaged in'the active conduct of the affairs of the corporation; (3) in which capital, whether invested or borrowed, is not a material income-producing factor; (4) but does not include any foreign corporation, or any corporation 50 per centum or more of whose gross income consists either of gains, profits, or income derived from trading as a principal, or of gains, profits, commissions or other income derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, inclusive.
That the petitioner stockholders were regularly engaged in the active conduct of its affairs, and that the income was primarily due to their activities does not seem to be questioned by the respondent, and the evidence supports those conclusions. Likewise it is clear that no part of the. income was derived from a Government contract or contracts. It is therefore necessary for us to inquire only whether the petitioner meets the other conditions prescribed by the statutes.
That the petitioner was a principal is clear, since it was acting in its own behalf. Was it then dealing in a commodity or thing of such a nature that it was trading as a principal within the meaning of the Revenue Acts of 1918 and 1921? We think that it was. It was trading in a commodity that is as well defined and capable of being bought, sold and delivered as are iron, coal, corn or wheat. It was buying and selling space and the privilege of advertising in certain theatres, and it paid large amounts therefor, because they were valuable and readily salable. It is true that it prepared and displayed advertising for its clients, but there is nothing in the record to show that it attracted the clients, because of the high character *397 or quality of the advertising it produced, or because of the skill, talent or services of its stockholders and officers, but on the other hand, the evidence strongly indicates that it was able to procure business because it owned or controlled the space and privileges in certain theatres where the clients desired their advertisements to be displayed. It seems to us that fundamentally the petitioner’s position is little different from that of a newspaper that offers space in its issues to those persons or corporations who desire to advertise. The fact that the petitioner and the newspaper own space advantageous and available for advertising is the controlling factor in attracting clients, rather than the fact that they are also prepared to design and prepare the advertisements. We are convinced that the petitioner was trading as a principal, within the meaning of the revenue acts cited and since all of its income appears to have been derived from that trading, it follows that it is not entitled to the classification it claims.

Judgment will be rendered for the respondent.

Considered by Phillips, Milliken, and VaN FossaN.